IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY BAILEY, #370379          *
          Plaintiff,

     v.                         *    CIVIL ACTION NO. WDQ-14-1627

GREGG L. HERSHBERGER, SECRETARY   *
KATHLEEN GREEN, WARDEN
          Defendants.         *
                        *****

MEMORANDUM

I. Procedural History

On May 19, 2014, Gregory Bailey, who is housed at the Eastern Correctional Institution

("ECI") in Westover, Maryland, filed this 42 U.S.C. § 1983 lawsuit against former Secretary of the

Maryland Department of Public Safety and Correctional Services ("DPSCS") Gregg Hershberger and

ECI Warden Kathleen Green, seeking medical treatment, along with monetary and compensatory

damages.  Bailey complains that on August 17, 2011, he was getting off a DPSCS van when he

slipped and fell while stepping on a wooden, portable step.  ECF No. 1.  He contends that because

he was shackled in full restraints at the hands, waist and legs he "had no ability to catch himself from

falling," and sustained an injury to his back.  *Id*.  Bailey asserts that correctional officers are

supposed to assist inmates climbing in or exiting transportation vehicles to "give some support and

balance."[1]  He alleges that he now suffers from chronic back pain and his fall "pushed two bones in

his vertebrae," causing him to "list" to the right side.  Bailey claims that he was informed he would

require back surgery to correct the problem, but the medical provider has made no plan to schedule

the surgery.  Rather, the provider has provided analgesics to "mask" the pain.  *Id*.  Defendants have

---

[1] In an attachment to the complaint Bailey complains of custodial negligence related to the August
2011 incident.  ECF No. 1 at pgs. 6-7.

filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF No. 13. Plaintiff has filed opposition responses. ECF Nos. 15 & 16. The case may be determined without oral argument. *See* Local Rule 105.6. (D. Md. 2014). For reasons to follow, Defendant's motion to dismiss or for summary judgment, construed as a motion for summary judgment, shall be granted.

II.     Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1) (A); *see Baldwin v. City of Greensboro,* 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett,* 477 U.S. 317, 322–23 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* at 252.

To be entitled to consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such as would be admissible in evidence. *See* Fed. R. Civ. P. 56(c); *see also Sakaria v. Trans World Airlines,* 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment); *Mitchell v. Data Gen. Corp.,* 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary

2

judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered

sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim

at trial."). With regard to documentary evidence, "unsworn, unauthenticated documents cannot be

considered on a motion for summary judgment. To be admissible at the summary judgment stage,

documents must be authenticated by and attached to an affidavit that meets the requirements of Rule

56(e)—that the documents be admissible in evidence." *Miskin v. Baxter Healthcare Corp.,* 107

F.Supp.2d 669, 671 (D. Md. 1999) (citing *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir. 1993)). The

court considers evidence related to a motion for summary judgment in the light most favorable to the

non-moving party, drawing reasonable inferences in its favor. *See Ricci v. DeStefano,* 557 U.S. 557,

586 (2009); *see also George & Co., LLC v. Imagination Entm't Ltd.,* 575 F.3d 383, 392 (4th Cir.

2009). Where, as here, defendants' motion relies on materials (declarations and medical records)

outside the scope of the pleadings, the dispositive motions shall be converted into a motion for

summary judgment. *See McBurney v. Cuccinelli*, 616 F.3d 393, 409, n.2 (4th Cir. 2010).

III. Analysis

Defendants assert that on April 3, 2013, Bailey was treated by Nurse Practitioner JoVonne

Osborne for lower back pain resulting from a 2011 fall. Osborne treated Bailey with a one-month

trial of Robaxin and Motrin,[2] with a recommendation to alter treatment if the pain did not resolve

itself. ECF No. 13-1. One year later, on March 26, 2014, Bailey was seen by Physician's Assistant

Bruce Ford for his complaints of back pain arising from a fall that occurred when "the stool into a

---

[2] Robaxin (methocarbamol) is a muscle relaxant. It works by blocking nerve impulses (or pain sensations) that are sent to your brain. *See* http://www.drugs.com/robaxin.html. Motrin (ibuprofen) is a nonsteroidal anti-inflammatory drug ("NSAID"). It works by reducing hormones that cause inflammation and pain in the body. *See* http://www.drugs.com/motrin.html

van twisted and he fell backwards onto the pavement…"   He was x-rayed and the records indicate

that Bailey was treated with Naproxen.[3]  Further complaints of lumbar pain arose on April 29 and

May 5, 2014, when Bailey was seen by healthcare professionals.  Bailey was diagnosed with Grade I

retrolisthesis of the L4 –L5 portion of his back[4] and was treated with an increased dosage of

Naproxen.  A bottom bunk was ordered and Bailey was given a no work or gym order for five days.

On May 7, 2014, he was seen by Dr. Paul Matera for chronic back pain.  Dr. Matera noted that

Bailey had no gait issues or weakness, had a mildly reduced range of motion to his lumbar spine and

was raising complaints of intermittent left hip pain.  Dr. Matera decided to reassess the effects of the

Naproxen on Bailey's condition in three to four weeks and ordered that a left hip x-ray be conducted.

 ECF No. 13-1, at pgs. 1-13.

Defendants  argue that Bailey's claim should be dismissed because he has failed to exhaust

his administrative remedies as required under the Prison Litigation Reform Act ("PLRA") or 28

U.S.C. § 1997e(a).  They present the declaration of the Inmate Grievance Office ("IGO") Executive

Director to argue that Bailey has never filed a grievance with the IGO.  ECF No. 13-2, at Oakley

Decl.

In his opposition, Bailey argues that his complaints of back pain were ignored until 2013,

when he started receiving treatment.  ECF No. 15.  He further contends that on August 12, 2011, an

aluminum stool used to assist inmates in getting out of a transportation van "slipped from under my

feet" and he complained of a hurt back.  Bailey states that he was not sent to the medical department

---

[3] Naproxen is a nonsteroidal anti-inflammatory drug ("NSAID). It works by reducing hormones that
cause inflammation and pain in the body. *See* http://www.drugs.com/naproxen.html.

[4] A retrolisthesis is a posterior displacement of one vertebral body with respect to an adjacent
vertebrae to a degree less than a luxation. Typically a vertebra is said to be in a retrolisthesis position when

4

but was instead placed in a holding area.   He alleges that an incident report was not written as promised. *Id.*

Bailey claims that he filled out an administrative remedy procedure ("ARP") request in August of 2011, but did not receive a response until six to eight months later. He argues that "[it] would have been impossible for me to comply" with the IGO procedures and his only option to gain proper redress, within the applicable three-year statute of limitations, was through a § 1983 complaint. Bailey claims that as this was his first incarceration, he was unfamiliar with the grievance process. *Id.*   He attaches exhibits which show that in May of 2014, he was informed by Maryland authorities that his tort claim was untimely and in August of 2011 and January of 2014, he filed ARPs at the institution level regarding the August 2011 incident.   ECF No. 16.

The PLRA provides, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Thus, the exhaustion provision plainly extends to Bailey's allegations. His complaint must be dismissed unless he can show that he has satisfied the

---

it translates (slides) backward with respect to the vertebra below it. *See* http://www.headbacktohealth.com/Retrolisthesis.html

administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210 and Code of Maryland Regulations ("COMAR"), Title 12 § 07.01.05; *see also* Division of Corrections Directive ("DCD") 185-002, § VI.N I.

Administrative remedies must, however, be available to the prisoner and this court is

"obligated to ensure that any defects in administrative exhaustion were not procured from the action

or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner,
> through no fault of his own, was prevented from availing himself of it. *See
> Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*,
> 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all
> available remedies simply by failing to follow the required steps so that remedies that
> once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89
> (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have
> utilized all available remedies "in accordance with the applicable procedural rules,"
> so that prison officials have been given an opportunity to address the claims
> administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available
> remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d
> 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008); *see also Blake v. Ross*, 787 F.3d 693, 700-01

(4th Cir. 2015) (inmate's belief that he exhausted administrative remedies was a reasonable

interpretation of investigative and grievance procedures).

Bailey acknowledges that he did not complete the grievance process before filing this

complaint, but seemingly requests a waiver based upon his unfamiliarity with the ARP process and

the untimeliness of the prison authorities response.[5] The United States Supreme Court, however, has

stated that it "will not read futility or other exceptions into statutory exhaustion requirements..."

*Booth v. Churner,* 532 U.S. 741, n. 6 (2001); *see also Goodwin v. Beasley,* 2011 WL 835937, *3

(M.D. N.C. March 3, 2011) ("Courts have squarely rejected prisoners' attempts to bypass the

---

[5] The Maryland ARP process provides that the Warden may once extend the time for filing a response
to the ARP, but if he otherwise fails to respond to the request in a timely fashion, the "inmate request for
administrative remedy is considered denied" and the inmate may appeal to the Commissioner of Correction.
*See* DCD 185-002.VI.L.17. (copy attached)  Thus, an inmate's failure to exhaust is not excused based upon the
Warden's alleged failure to timely respond.

exhaustion requirements by merely arguing lack of knowledge about the grievance process."); *Smith v.. Boyd,* 2008 WL 2763841, *1 (D. S.C. July 11, 2008) ("This court cannot waive the exhaustion requirement, which was specifically mandated by Congress, based on plaintiff's ignorance of the requirement or any perceived futility or inadequacy with the administrative grievance process"). Simply put, an inmate must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *See Woodford,* 548 U.S. at 88; *Johnson v. Jones,* 340 F.3d 624, 628 (8th Cir. 2003) (dismissal is required under § 1997e(a) if an inmate has failed to exhaust all available administrative remedies *prior* to filing suit).

Even if exhaustion requirements were found to be met and the court were to look at the merits of Bailey's claims, I would find that no constitutional claims had been stated against the named Secretary and Warden.   First, with regard to the incident of August, 2011 and the alleged failure of correctional officers to provide him custodial support when exiting the prison van, Bailey has failed to set out a colorable constitutional claim.   At most, he has set out a claim of negligence which is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328 (1986). Further, Bailey has failed to set out a claim against the named defendants, alleging how they personally participated in violating his rights under the law. [6] *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Further, § 1983 liability on the part of supervisory defendants requires a showing that: "(1)

---

[6] Under § 1983, individual liability must be based on personal conduct. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985); *see also Foote v. Spiegal,* 118 F.3d 1416, 1423 (10th Cir. 1997).   Further, absent subjective knowledge, a prison official is not liable. *Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *see Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998).

the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted).   There is no allegation or showing demonstrating former Secretary Hershberger and ECI Warden Green's supervisory liability with regard to the alleged denial of medical care. *See Shaw*, 13 F.3d at 799; *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990).   There is no evidence that Hershberger or Green had actual or constructive knowledge that medical staff were ignoring Bailey's complaints of back pain and that the denial of care posed "a pervasive and unreasonable risk" of constitutional injury to Bailey.

IV. Conclusion

For the aforementioned reasons, defendants' court-construed motion for summary judgment shall be granted.   Judgment shall be entered in favor of defendants and against Bailey.

Date: July /6 , 2015

_____
William D. Quarles, Jr.
United States District Court Judge

9